MICHAEL J. KENNEDY, Respondent, *v.* NATIONAL JEWELERS' BOARD OF TRADE, Appellant, Impleaded with ALFRED J. PAUL and Another, Composing the Firm of A. PAUL & COMPANY, and Others, Defendants.

Third Department, December 28, 1916.

Malicious prosecution — unfounded bankruptcy proceeding — recovery of damages in Federal court for detention of property — subsequent action for malicious prosecution does not lie for the same damages — damages — injury to feelings — erroneous charge — acts of receiver in bankruptcy — effect of bankruptcy proceeding — improper verification of petition — excessive verdict.

As subdivision e of section 3 of the Bankruptcy Act provides that where the proceedings are dismissed the alleged bankrupt " shall be allowed all costs, counsel fees, expenses and damages " occasioned by the seizure

and detention of his property, he cannot subsequently maintain an action to recover the same damages for the malicious prosecution of .involuntary bankruptcy proceedings against him, if he has already been awarded damages in the proceeding itself.

Even if the damages allowed in the bankruptcy proceeding were inadequate he cannot afterwards sue in a State court for malicious prosecution to recover the same damages.

In any event, in such action for malicious prosecution it is error to allow the plaintiff to show acts of violence and oppression by the receiver in bankruptcy when taking possession of the alleged insolvent's property, especially where it would lead · the jury to believe that the plaintiff could recover for mental suffering.

So, too, it was error to charge in substance that the filing of the petition in bankruptcy was equivalent to an attachment or injunction which placed the bankrupt's rights in his property in abeyance until the final adjudication where, as a matter of fact, he regained possession of his property long before the final adjudication by filing a bond.

Moreover, it was error to charge that the jury might consider the fact that the petition in bankruptcy was not properly verified in that the deponent's oath was taken by telephone.

*Held,* that a verdict of $15,000 was excessive.

HOWARD and WOODWARD, JJ., dissented.

APPEAL by the defendant, National Jewelers' Board of Trade, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Schenectady on the 16th day of December, 1915, upon the verdict of a jury for $15,000, and also from an order entered in said clerk's office on the 15th day of December, 1915, denying defendant's motion for a new trial made upon the minutes.

*Fryer & Lewis* [*Edgar T. Brackett, Stephen P. Anderton, Charles G. Fryer* and *Ewing R. Philbin* of counsel], for the appellant.

*Visscher, Whalen & Austin* [*William L. Visscher* of counsel], for the respondent.

COCHRANE, J.:

The plaintiff has recovered a verdict of $15,000 for the malicious prosecution of an involuntary bankruptcy proceeding against himself. The defendant National Jewelers' Board of Trade was not a party to that proceeding but has been held liable on the theory that it instigated or co-operated with

others in the commencement and prosecution thereof. The proceeding was instituted by the filing of a petition on March 13, 1914. On the same day a receiver was appointed who took possession of the plaintiff's property and held such possession for four days, when on filing a bond by the plaintiff the latter was restored to the possession of his property. Subsequently the solvency of the plaintiff was established and the proceeding was dismissed.

Subdivision e of section 3 of the Bankruptcy Act (30 U. S. Stat. at Large, 547) provides that in such case the alleged bankrupt "shall be allowed all costs, counsel fees, expenses, and damages occasioned by such seizure, taking, or detention of such property." The costs and expenses of the plaintiff in such proceeding were thereupon on his application judicially determined as were also his damages occasioned by the "seizure, taking and detention of the property," and a judgment therefor was entered in that proceeding, which judgment was paid to the plaintiff.

It is clear, therefore, that the plaintiff having recovered in that proceeding his damages for the taking and detention of his property is not entitled to recover therefor in this action. Nevertheless he was permitted to show herein against the objections and exceptions of the appellant all that took place in detail in connection with taking possession of his property by the receiver. Much of a sensational character in this connection was introduced, and we think quite improperly. It was proper for the plaintiff to show that the receiver took possession, but there his evidence on that branch of the case should have stopped. The plaintiff was selling out his property at auction, which had been conducted for about two months prior to the time when the receiver took possession. It was shown that in the evening when twenty-five or thirty customers were in the store, the receiver with five or six others entered, interrupted the business there being conducted, stopped salesmen who were making change and wrapping up articles which had been purchased, and that they assaulted the plaintiff who at the time was in poor health and suffering with a broken arm, and forcibly took from him money he was hold-

ing in his hand. Further evidence was given as to taking over the keys, turning the combination in the safe, and locking the doors of the store and refusing to allow plaintiff to leave an agent or representative in the store. All these facts were given in considerable detail and with much dramatic effect and their recital evidently had much to do with the production of this large verdict. When the receiver was appointed it was his duty to take possession of the property and he appeared at plaintiff's store as the representative of the court. It was the duty of the plaintiff to quietly surrender possession until such time as the court otherwise directed. All of the disturbance and excitement which took place in the store after the arrival of the receiver was precipitated by the conduct of the plaintiff or those representing him. For that the plaintiff was responsible. And in any event all damages for the seizure and detention of the property were adjudicated and assessed in the bankruptcy proceeding and for that the plaintiff has been compensated. If the receiver in taking possession was tactless or unduly abrupt or adopted unnecessarily drastic methods all that has been eliminated by the Bankruptcy Court, the aid of which the plaintiff himself invoked for the adjustment of his damages by reason of such acts. And if the damages allowed him were inadequate a remedy for such inadequacy does not exist in this court. The trial justice it is true charged the jury that plaintiff was not entitled to recover for damages occasioned by the seizure, taking and detention of his property in the bankruptcy proceeding. But that did not go far enough to cure the error in view of the fact that evidence of such an inflammatory and irrelevant nature had been received. The jury were left with the impression that the plaintiff had been very badly treated by the receiver and that they were at liberty to compensate the plaintiff therefor. They were not informed in the charge as they should have been that they were to exclude from their minds all that took place when the receiver took possession. They naturally concluded that, although the plaintiff could not recover for injury to his property taken by the receiver he could recover for mental suffering caused by the seizure of his property. The plaintiff was not at liberty to split up his damages caused by the receiver and recover in the bankruptcy

proceeding damages to his property interests for the unlawful seizure and then come into this court and seek damages for the humiliation or mental suffering growing out of the same acts. The damages of the plaintiff should have been assessed herein as if there had been no receiver and no interference with the plaintiff by him. This erroneous view of the law is, we think, reflected in this large verdict.

Errors occurred in the course of the charge by the learned trial justice. The jury were charged as follows: "A bankruptcy proceeding is not like an ordinary civil suit. It is very drastic in its effects. Whether it is accompanied by an actual seizure of the bankrupt's property or not, it places an embargo, as it were, upon his rights to dispose of his property and his business generally. No prudent person would buy from him and no prudent person would sell anything to him on credit; because all transactions between a bankrupt and third persons after a petition in bankruptcy has been filed are liable to be investigated, reviewed, set aside and assailed as to their validity and effect in case of an adjudication. The filing of a petition is a caveat to all the world, in effect, an attachment or injunction. After the filing of a petition, all property rights of a debtor are practically in abeyance until a final adjudication made upon the petition and those who deal with a bankrupt's property until such adjudication, deal with it at their peril." This charge and other parts thereof containing similar expressions had the effect of unduly impressing the jury with the gravity and seriousness of the bankruptcy proceeding and creating in their minds a biased and distorted notion of the effect of that proceeding. The filing of the petition was not in substance an attachment or injunction and the use of those terms as well as the statement that independently of the actual seizure of the property the proceeding constituted an embargo could not but produce in the minds of the jury a wrong conception of the situation. The receiver was only in possession four days at the expiration of which time the property was restored to the plaintiff by order of the court on his giving a bond, and he was thereafter at liberty to deal with it as freely as ever. The adjudication in the bankruptcy proceeding, however, was not made until a month after the receiver was discharged. But

the jury were in effect told that the embargo continued throughout the entire proceeding and that the property rights of the plaintiff were "practically in abeyance until a final adjudication made upon the petition," and that those who dealt with the property until such adjudication dealt with it at their peril. This was clearly erroneous and distinctly prejudicial.

Evidence was introduced tending to show that the petition in bankruptcy had not been verified before the notary public whose name was attached to the verification and before whom it purported to have been verified, or that he had taken the affidavits over the telephone. The court, after calling the attention of the jury at considerable length to the circumstances of this grave irregularity, said: "You may think it important as bearing upon whether you should find or not find the Board of Trade liable as to the manner in which that paper was dealt with there in New York. If you should determine that it was not verified by these men, why all that comes back to the Board of Trade, because the representative of the Board of Trade could not take the affidavits of these men of their acknowledgment, Ilgen and Eckstein, over the telephone. That was not a legal oath. It answered none of the requirements of the rules of the United States courts." All that was quite irrevelant to the issues involved in this case and the jury should have been so instructed. On the contrary, the trial justice declined expressly so to charge when requested to do so. The appellant if liable at all is equally liable whether that petition was regularly or irregularly executed in the manner indicated. Whatever criticisms might properly be made as to the practice in procuring the verification of that petition, or whatever liability may have been incurred by those connected therewith, the question was one which did not affect the bankruptcy proceeding and we are unable to see how it properly bears on any question involved herein.

Other errors occurred during the course of the trial. It is our duty to overlook unsubstantial errors. But in this case we think they were substantial and affected the result. The proceeding in bankruptcy, for the institution of which the appellant has been held liable, did not involve any interference with the person of the plaintiff. It involved no interference

with his property rights, for which amends have not been made in the Bankruptcy Court. The plaintiff was closing out his business, intending to withdraw therefrom, or at least to engage again in business on a smaller scale, because of poor health. It is quite apparent, therefore, that he sustained no great damage in his business. The bankruptcy proceeding involved of course a charge of insolvency. To some business men this might be serious. To the plaintiff, closing out his business at auction as he was, with a view to retiring therefrom, it is apparent that whatever damages he has actually sustained have been for the most part due to such humiliation, chagrin and annoyance as he was occasioned. We do not minimize the importance of mental suffering. But it seems to us that the occurrences have been magnified beyond their proper proportions. Many a civil action is instituted more threatening and direful in their prospective consequences than was this bankruptcy proceeding, and involving the business interests or the moral character or reputation of a defendant. And after a successful defense of such an action a defendant is not ordinarily awarded a verdict in an action for malicious prosecution of such magnitude as has been awarded herein. It is true that the jury were permitted to award punitive damages, but considering the case in its entirety, and in the light of its environment and surrounding circumstances, we are convinced that the verdict is largely excessive, and that to such a result the errors in the case, some of which we have pointed out, were important contributing factors.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concurred; KELLOGG, P. J., concurred in said opinion and also in separate memorandum; except HOWARD and WOODWARD, JJ., who dissented.

KELLOGG, P. J. (concurring):

Miller in instituting the bankruptcy proceeding was acting for his client, A. Paul & Co., and was not representing the defendant. The defendant is not responsible for his acts. Its action in obtaining the signature of two creditors to the petition of Miller and A. Paul & Co. was in good faith and upon

probable cause. The plaintiff's brother by trying to coerce A. Paul & Co. to recognize an unjust claim, and not the action of the defendant, has caused any injury the plaintiff has sustained. In my judgment the verdict is against the evidence. I favor reversal upon the law and the facts.

Judgment and order reversed and new trial granted, with costs to appellant to abide event.